KOZINSKI, Circuit Judge,
dissenting:
I join all three of my dissenting colleagues. Judges Rymer, Kleinfeld and Bybee have catalogued eloquently the many reasons why neither the majority nor the concurrence reflects what the law is, or should be, and there’s nothing I can add on that score.
I write only to point out that the issue we are called on to decide may be a problem of the schools’ own making. Runyon v. McCrary, 427 U.S. 160, 172-73, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), and McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 295-96, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), prohibit private racial discrimination in the making and enforcing of contracts. The provision is implicated here because the schools charge tuition and must therefore enter into a contractual relationship with each student. I don’t believe section 1981 would apply at all if the schools were run entirely as a philanthropic enterprise and allowed students to attend for free. In Runyon, “the racial exclusion practiced by the [schools] amounted] to a classic violation of § 1981,” because “[t]he parents ... sought to enter into contractual relationships with [the schools] for educational services.” 427 U.S. at 172, 96 S.Ct. 2586. The Court emphasized the commercial nature of the relationship: “Under those contractual relationships, the schools would have received payments for services rendered, *889 and the prospective students would have received instruction in return for those payments.” Id. I have found no case where section 1981 has been applied to a charity. Were the schools to forego charging tuition, their relationship to their students would probably not be deemed “contractual” as that term is used in section 1981 and Runyon.
Being able to charge tuition is, of course, not inconsequential. For most private schools it is a make-or-break proposition. But it may not be so for the Kamehameha Schools, which were set up primarily as eleemosynary institutions. The tuition they charge reflects only a small fraction of their operating costs and, even then, most students pay a reduced tuition, or no tuition at all. See maj. op. at 831-32. The schools’ substantial endowment may enable them to continue operating without charging any tuition for a very long time— perhaps indefinitely.
Given the scores of pages we have written on both sides of this issue, it should be clear that the question is close and ours may not be the last word. Given the passions this case has aroused, see maj. op. at 835 n. 6, it’s worth noting that what’s really at stake may not be the operation of the Kamehameha Schools along their traditional (preferential) model, but merely a few million dollars a year the schools now get from their own students.